| | |
|---|---|
| TYRONE JOHNSON, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>ROY COOPER, )<br>)<br>Respondent. )<br>_____) | ORDER |

**THIS MATTER** is before the Court upon Petitioner Tyrone Johnson's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1). Also before the Court is Respondents' Motion for Summary Judgment. (Doc. No. 5).

**I. BACKGROUND**

Petitioner was convicted on May 4, 2011, of first-degree murder after a trial by jury in the Superior Court of Mecklenburg County, and sentenced to life imprisonment without parole. The North Carolina Court of Appeals summarized the facts as follows:

> Tyrone Johnson (Defendant) was driving around Charlotte looking for someone to buy cocaine for him in the early morning hours of 29 May 2000. Defendant saw Johnnie Mae Shine (Ms. Shine) and stopped. Defendant asked Ms. Shine if she could get him some cocaine. Ms. Shine said that she could, and invited Defendant to her house. Ms. Shine left Defendant at her house while she went to purchase the cocaine. Defendant was approximately 5' 10" tall and weighed between 195 and 200 pounds. Ms. Shine was about 4' 6" tall and weighed between 70 and 75 pounds.
>
> According to Defendant's testimony, Ms. Shine obtained cocaine with Defendant's money and she and Defendant then shared the cocaine. Defendant suspected that Ms. Shine was hiding some of the cocaine and he confronted her. Ms. Shine became upset and asked Defendant to leave her house. Defendant refused to leave, and Ms. Shine ran out the front door. According to Defendant, Ms. Shine returned with a knife in her hand and attempted to pull Defendant out of her house by his shirt. Defendant testified he feared that Ms. Shine was going to stab him, so he

1

> attempted to take the knife away from her. In the ensuing struggle, Defendant managed to take the knife from Ms. Shine and he then began stabbing her multiple times. Defendant fled from the scene of the stabbing.
>
> Two of Ms. Shine's neighbors, who lived together, testified they heard a loud knock on their front door, and someone screamed: "[S]top, I'll give it back." The neighbors found Ms. Shine badly injured on their front porch. The neighbors called 911, and Ms. Shine was taken to the hospital, where she died during emergency surgery.

State v. Johnson, 734 S.E.2d 139, *1 (N.C. Ct. App. 2012) (Table).

Petitioner filed a direct appeal. On November 6, 2012, the North Carolina Court of Appeals filed an unpublished opinion finding no error. Id. at *3. Petitioner filed a petition for discretionary review ("PDR") in the North Carolina Supreme Court, which was denied on March 7, 2013. State v. Johnson, 366 N.C. 576, 738 S.E.2d 387 (2013).

Petitioner filed a pro se motion for appropriate relief ("MAR") dated November 15, 2013 in the Superior Court of Mecklenburg County. (Resp't's Ex. #8. Doc. No. 6-12). It was denied on December 9, 2013. (Order Den. MAR, Resp't's Ex. #9, Doc. No. 7-1). Petitioner filed a pro se petition for writ of certiorari in the North Carolina Court of Appeals, which was denied on January 24, 2014. (Order Den. Cert. Pet., Resp't's Ex. #12, Doc. No. 7-4). The North Carolina Supreme Court dismissed Petitioner's subsequently filed certiorari petition on April 10, 2014. (Order Den. Cert. Pet., Resp't's Ex. #14, Doc. No. 7-6).

Petitioner filed the instant petition for writ of habeas corpus in the Federal District Court for the Eastern District of North Carolina, which transferred it to this Court. The petition is dated April 30, 2014. Petitioner raises the following grounds for relief: (1) judicial bias and fraud because the judge deliberately mislead the defense about the contents of two notes sent out by the jury foreman during the trial; (2) ineffective assistance of trial counsel due to his lawyer's

withdrawal of a motion for mistrial amidst a conflict of interest, and failure to move to strike two biased jurors; to object to numerous instances of obvious hearsay testimony; to object to testimonial evidence gained via an illegal seizure; to object to irrelevant, prejudicial testimony of the victim's sister, and to obtain a total recordation of the trial; (3) due process violations because the state shifted the burden of proof to him by eliciting testimony from a witness (Steve Furr) suggesting Petitioner could not refute the integrity of the state's evidence, and the voluntary intoxication instruction relieved the state of the burden of proving premeditation and deliberation and failed to sufficiently inform the jury of applicable intoxication defense; (4) ineffective assistance of appellate counsel for not raising the issues raised herein; (5) his conviction was obtained via use of evidence gained in violation of the Fourth Amendment; and (6) the trial court lacked subject matter jurisdiction due to a fatally defective indictment. Petitioner also asserts that cumulative errors deprived him of a fundamentally fair trial.

Upon completion of an initial review of the petition and attached documents as required by Rule 4 of the Rules Governing Section 2254 Cases, the Court ordered Respondent to answer the petition. (Doc. No. 3). On June 6, 2014, Respondent filed a Response, Motion for Summary Judgment, and Memorandum in Support. (Doc. Nos. 4-6).

In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court provided Petitioner notice of Respondent's Motion for Summary Judgment and an opportunity to respond. (Doc. No. 8). Petitioner did so on July 10, 2014. (Doc. No. 9).

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir.1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### B. The Antiterrorism and Effective Death Penalty Act of 1996

Review of Petitioner's claims that were adjudicated on their merits by the state courts is limited by the deferential standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), as construed by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 374-91 (2000). This Court may grant habeas relief on claims of constitutional error adjudicated on their merits in state court only if that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

A state court decision is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by th[e United States Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court

precedent and arrives at [an opposite result]." Williams, 529 U.S. at 405; Lewis v. Wheeler, 609 F.3d 291, 300 (4th Cir. 2010) (quoting Williams, 529 U.S. at 405). A state court unreasonably applies federal law when it "identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case." Williams, 529 U.S. at 407.

"[A]n unreasonable application of federal law is different from an incorrect application of federal law" for § 2254(d)(1) purposes. Williams, 529 U.S. at 410. The former requires a "substantially higher threshold" to obtain relief than does the later. Schiro v. Landrigan, 550 U.S. 465, 473 (2007). A state court's determination that a claim fails on its merits cannot be overturned by a federal habeas court "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

A habeas court, therefore, must "determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." Richter, 131 S.Ct. at 786. A petitioner has the burden of establishing that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

## III. DISCUSSION

### Ground One:  Judicial Bias

Petitioner claims that his due process rights were violated by the trial judge's bias against him.  He alleges that the trial judge deliberately mislead the defense about the contents of two notes sent out by the jury foreman during the trial.

The first note was sent out by Juror No. 8 before the jury was brought back after the morning break on the second day of trial.  (Trial Tr. 670, Resp't's Ex. #15, Doc. No. 7-7).  The note said:

> Judge, this morning (Thursday) as I separated the section of the Charlotte Observer, I saw a headline in the "local" section that may relate to this trial.  As soon as I saw it I put the section down and didn't look at it further.  What I recall is "Defense . . . crack . . . .  It may relate to this case, maybe not, but I thought I should report it.

(Pet. 26, Doc. No. 1).  What the trial judge read to counsel and the defendant was slightly different, however:

> Judge, this morning as I separated the section in the Charlotte Observer I saw a headline in the local section that may relate to this trial.  As soon as I saw it, I put the section down and didn't look at it further.  That's why I called it the (sic) Court's attention.  It may relate to this case, maybe not, but I thought I should report it.

(Trial Tr. 670, supra).  Petitioner contends that the trial judge made up a sentence and substituted it for one that the juror actually wrote, in order to prejudice Petitioner.

The second note was sent out during deliberations.  (Trial Tr. 1218-19, supra).  It asked that the jury be released at 5:00 p.m. and allowed to continue deliberations the next morning, because several jurors had family and job obligations that evening.  (Pet. 25, supra).  The trial judge read the note almost verbatim to counsel and Petitioner.  (Trial Tr. 1219, supra).  Petitioner

6

does not indicate how the judge's handling of this note is evidence of bias. The MAR court rejected Petitioner's judicial bias claim on the merits. (Order Den. MAR, Resp't's Ex. #9, Doc. No. 7-1).

"While 'a fair trial in a fair tribunal is a basic requirement of due process,' not all claims of bias rise to a constitutional level." Rowsey v. Lee, 327 F.3d 335, 341 (4th Cir. 2003) (quoting Withrow v. Larkin, 421 U.S. 35, 46 (1975)). "In order to prevail in a deprivation of due process claim, a defendant must show a level of bias that made 'fair judgment impossible.'" Rowsey, 327 F.3d at 341 (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)). Furthermore, because it was the jury not the trial judge that found Petitioner guilty of first-degree murder, Petitioner must demonstrate that the judge's bias influenced the jury to a degree that made "fair judgment impossible." Rowsey, 327 F.3d at 342.

Due process does not require a trial judge to read every note from the jury to the defendant, much less that he read the note verbatim. See, e.g., United States v. Henry, 325 F.3d 93, 106 (2d Cir. 2003) (noting that the district court should have informed counsel that it was redacting the vote count from a jury note, but that the failure to reveal the vote count itself was not an abuse of discretion); United States v. Warren, 594 F.2d 1046, 1049 (5th Cir. 1979) ("The district court did not err in failing to disclose the vote of the jury."). In this case, the trial judge communicated the substance of the note to defense counsel and Petitioner. The sentence that the judge added ("[t]hat's why I called it the (sic) Court's attention") communicated the same message as the last sentence of the juror's note ("[i]t may relate to this case, maybe not, but I thought I should report it"). The judge also informed counsel and Petitioner that there was an article in the local section of that morning's Charlotte Observer reporting what had happened during trial the previous day. (Trial Tr. 670, supra). When defense counsel asked if the headline

7

"[said] anything," the judge did not have an opportunity to answer fully before Juror #8 entered the courtroom. (Trial Tr. 670, supra). The judge confirmed with the juror that he had seen a headline he thought might pertain to the case but did not read the article. (Trial Tr. 671, supra). Defense counsel did not ask to question the juror.

Petitioner's assertion that the judge omitted the words "defense" and "crack" because of bias, rather than for some other reason, is completely speculative. Furthermore, Petitioner does not point to anything the trial judge said or did in the jury's presence that indicated a biased opinion in this case. While it could have been more detailed, the judge's inquiry of Juror No. 8 regarding what he saw and did with the newspaper article clearly communicated that the juror had acted appropriately.

Therefore, it was not unreasonable for the MAR court to conclude that the judge's representation of the contents of the note did not demonstrate bias. The MAR court's rejection of Petitioner's due process claim did not involve an unreasonable application of clearly established Federal law. See § 2254(d)(1). Nor was it based on an unreasonable determination of the facts in light of the evidence presented at trial. See § 2254(d)(2).

Furthermore, the trial judge's omission of the words "defense" and "crack" was harmless. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (harmless error standard on federal habeas review requires trial error to have "substantial and injurious effect or influence in determining the jury's verdict" to warrant relief). The words "crack" and "defense" in the headline did not provide Juror No. 8 with extraneous information not introduced at trial. The previous day, the jury had heard evidence that the victim used crack cocaine regularly. (Trial Tr. 475, supra). Additionally, Petitioner testified that he and the victim smoked crack together the night she was killed. See Johnson, 734 S.E.2d at *1.

Finally, Petitioner's judicial bias claim cannot provide the basis for a valid ineffective assistance of appellate counsel claim. (See Ground Four, Pet. 10, supra.) The Sixth Amendment to the United States Constitution provides that all defendants charged with a crime have the right to effective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial to the defense. Strickland v. Washington, 466 U.S. 668, 687–88 (1984); see also, Evitts v. Lucy, 469 U.S. 387 (1985). Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430–31 (4th Cir. 1983)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697)).

Petitioner raised the substance of his current ineffective assistance of appellate counsel claim in his MAR, and the MAR court denied the claim on the merits. (Order Den. MAR, Resp't's Ex. #9, Doc. No. 7-1.) The MAR court's denial of Petitioner's ineffective assistance of appellate counsel claim was neither contrary to, nor an unreasonable application of, Strickland. Counsel cannot be ineffective for failing to raise a meritless claim.

**Ground Two: Ineffective Assistance of Trial Counsel**

Petitioner alleges that he received ineffective assistance of counsel due to his lawyer's withdrawal of a motion for mistrial amidst a conflict of interest, failure to move to strike two likely-biased jurors, failure to object to obvious hearsay numerous times, failure to object to testimonial evidence gained via an illegal seizure; failure to object to irrelevant, prejudicial testimony by the victim's sister; and failure to obtain a total recordation of the trial. (Ground Two, Pet. 7, supra).

Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts "explicitly requires that a petitioner summarize the facts supporting each of the alleged grounds for relief." Adams v. Armontrout, 897 F.2d 332, 333 (8th Cir. 1990). Rule 2(c) requires a petitioner to "state specific, particularized facts which entitle him . . . to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." Id. at 334.

In his habeas petition, Petitioner merely lists a series of conclusory allegations regarding the effectiveness of trial counsel but cites no supporting facts for any of them. The Rules Governing Section 2254 Cases in the United States District Courts do not require the federal courts to comb through state court pleadings or transcripts to ascertain whether facts exist to support conclusory allegations listed in habeas petitions. See id. at 333-34 (citations omitted). Petitioner's allegations of ineffectiveness on the part of trial counsel will be dismissed for failing to state a claim upon which relief may granted.

**Ground Three: Due Process**

Petitioner claims that his right to due process was violated because the state shifted the burden of proof to him by eliciting testimony from a witness suggesting Petitioner could not refute the integrity of the state's evidence. He also claims that his right to due process was violated because the voluntary intoxication instruction given to the jury relieved the state of the burden of proving premeditation and deliberation and failed to sufficiently inform the jury of the

applicable intoxication defense.[1] The MAR court rejected both of these claims on their merits. (Order Den. MAR, Resp't's Ex. #9, Doc. No. 7-1.)

Due process requires that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime charged. In re Winship, 397 U.S. 358, 364 (1970). In a first degree murder case, the state must persuade the jury beyond a reasonable doubt that every essential element of a homicide exists. Mullaney v. Wilbur, 421 U.S. 684 (1975).

During Homicide Detective Stephen Furr's testimony about evidence collected in the case, including DNA, the prosecutor asked whether "the defense requested of you that anything that had not already been examined by the laboratory be examined?" (Trial Tr. 966, Resp't's Ex. #15, Doc. No. 7-7). Defense counsel objected and moved for a mistrial, arguing that the prosecutor's question and Furr's response created a presumption in the minds of the juror's that the defense agreed with the accuracy of the State's DNA evidence. Counsel's argument was predicated on the belief that the prosecutor had asked Furr whether the defense had requested that any of the evidence be retested. When the court reporter read the question back to defense counsel, he recognized his error and withdrew his motion for a mistrial. (Trial Tr. 980, supra).

While the prosecutor's question may have been improper, it was not unreasonable for the MAR court to conclude that it did not relieve the State of its burden to prove each element of the crime beyond a reasonable doubt. The MAR court's denial of Petitioner's claim was neither contrary to, nor an unreasonable application of clearly established federal law.

Regarding Petitioner's second claim, the trial court gave the jury the following instruction on voluntary intoxication, taken from the North Carolina pattern jury instructions:

---

[1] Petitioner also renews his judicial bias/fraud claim, which the Court addressed previously. See Ground One, supra.

11

> You may find that there is evidence which tends to show that the defendant was intoxicated or drugged at the time of the acts alleged in this case. Generally, a voluntary intoxication or voluntary drug condition is not a legal excuse for a crime; however, if you find that the defendant was intoxicated or was drugged, you should consider whether this condition affected the defendant's ability to formulate the specific intent which is required for a conviction of first-degree murder. In order for you to find the defendant guilty of first-degree murder, you must find beyond a reasonable doubt that the defendant killed the deceased with malice and in the execution of an actual specific intent to kill formed after premeditation and deliberation. If, as a result of intoxication or a drugged condition, the defendant did not have the specific intent to kill the deceased, formed after premeditation and deliberation, the defendant is not guilty of first-degree murder. Therefore, I charge that if, upon considering the evidence with respect to the defendant's intoxication or drugged condition, you have a reasonable doubt as to whether the defendant formulated the specific intent required for a conviction of first-degree murder, you will not return a verdict of guilty of first-degree murder.

(Trial Tr. 1210-11). The court also instructed the jury that it was the state's burden to prove beyond a reasonable doubt that the defendant acted with a specific intent to kill after premeditation and deliberation and that the defendant did not act in self-defense. (Trial Tr. 1209-10.)

The MAR court's rejection of this claim did not result in a decision that was contrary to or an unreasonable application of clearly established federal law. Petitioner's jury was not instructed that he had the burden of proving the absence of criminal intent. Nor did the instruction imply that he bore the burden of persuasion. On the contrary, the court instructed that the state bore the burden of proving specific intent beyond a reasonable doubt and that, if in considering the evidence of intoxication, the jury had a reasonable doubt as to whether the defendant formulated a specific intent required for a first-degree murder conviction, it would not find defendant guilty of first degree murder based on premeditation and deliberation.

Finally, Petitioner's erroneous-instruction claim cannot provide the basis for a valid ineffective assistance of appellate counsel claim. (See Ground Four, Pet. 10, supra). Petitioner

12

raised the substance of his current ineffective assistance of appellate counsel claim in his MAR, and the MAR court denied the claim on the merits. (Order Den. MAR, Resp't's Ex. #9, Doc. No. 7-1). The MAR court's denial of Petitioner's ineffective assistance of appellate counsel claim was neither contrary to, nor an unreasonable application of Strickland. Counsel cannot be ineffective for failing to raise a meritless claim.

### Ground Four: Ineffective Assistance of Appellate Counsel

Petitioner claims that appellate counsel was ineffective for failing to raise a judicial bias claim and a claim challenging the trial court's voluntary intoxication instruction on direct appeal. The Court has disposed of these claims in previous sections of this Order. (See Ground One, supra, and Ground Three, supra).

### Ground Five: Fourth Amendment Claim

Petitioner claims that his conviction was obtained using evidence gathered in violation of the Fourth Amendment. Specifically, Petitioner asserts that the State argued that his failure to show up for a rendezvous with witness Chaunda Hunter after the murder was evidence of flight. Petitioner contends that law enforcement officers illegally detained Hunter in an effort to catch him. Petitioner raised the substance of this claim in his MAR, and the MAR court denied it on the merits.

Even assuming for the purposes of this claim that Hunter was illegally detained, it is of no help to Petitioner. "The Fourth Amendment protects people, not places." Katz v. United States, 389 U.S. 347, 351 (1967). Therefore, Fourth Amendment rights "may not be vicariously asserted." United States v. Rumley, 588 F.3d 202, 206, n. 2 (4th Cir. 2009) (quoting Rakas v. Illinois, 439 U.S. 128, 133–34 (1978)) (internal quotation marks omitted). A person who is

harmed only by the introduction of damaging evidence obtained through the illegal seizure of a third party has not had his Fourth Amendment rights infringed. See Rakas, 439 U.S. at 134 (citing Alderman v. United States, 394 U.S. 165, 174 (1969)). "[S]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the [seizure] itself, not by those who are aggrieved solely by the introduction of damaging evidence." Alderman, 394 U.S. at 171–72. Here, it was Hunter, not Petitioner, who was detained. Thus, only Hunter's Fourth Amendment rights were implicated. Consequently, the MAR court's rejection of this claim did not result in a decision that was contrary to or an unreasonable application of clearly established federal law.

**Ground Six: Short-form Indictment**

Petitioner claims that the trial court lacked jurisdiction to try him because his indictment was fatally defective. According to Petitioner, it did not allege all of the elements of first-degree murder. See Apprendi v. New Jersey, 530 U.S. 466 (2000); Jones v. United States, 526 U.S. 227 (1999) (holding that elements of a crime must be charged in the indictment and proven beyond a reasonable doubt). Petitioner raised this issue on direct appeal as a preservation issue, and the North Carolina Court of Appeals rejected it on the merits.

A review of the record shows that North Carolina indicted Petitioner using its "short-form" murder indictment, which charged that he "did unlawfully, willfully and feloniously and of malice aforethought kill and murder" Johnnie Mae Shine. (R. on Appeal, Resp't's' Ex. 3A 5, Doc. No.6-4). The indictment also cited the state's murder statute, N.C. Gen. Stat. § 14-17. (R. on Appeal, Resp't's Ex. 3A, supra).

"[U]nder North Carolina law, there is only one common law crime of murder, which by statute is divided into two degrees. . . . [A] short-form indictment that alleges the elements of common law murder is sufficient to satisfy the demands of the Sixth and Fourteenth Amendments." Hartman v. Lee, 283 F.3d 190, 198-99 (4th Cir. 2002).

Petitioner's indictment listed all of the elements of common law murder, the only murder offense recognized under North Carolina law. Consequently, Petitioner's challenge to the state court's rejection of his claim that the indictment omitted an "element" of the offense, fails. The state court's rejection of that claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

## IV: CONCLUSION

The record does not indicate a genuine dispute as to any material fact. Furthermore, Respondent is entitled to summary judgment as a matter of law. The Court, therefore, will deny and dismiss Petitioner's § 2254 habeas petition and grant Respondent's Motion for Summary Judgment.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that:

1) Petitioner's Petition for a Writ of Habeas Corpus (Doc. No. 1) is **DENIED;**

2) Respondent's Motion for Summary Judgment (Doc. No. 5) is **GRANTED**; and

3) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: March 31, 2015

Frank D. Whitney
Chief United States District Judge